UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICHOLAS MANCINI,

        Plaintiff,

v.   Case No. 6:16-cv-2232-Orl-37KRS

ROLLINS COLLEGE; JESSICA
NARDUCCI; ORIANA JIMINEZ; KEN
MILLER; REBECCA DECESARE; and
MEGHAN HARTE WEYANT,

        Defendants.

## ORDER

This cause is before the Court on consideration of the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 28), Plaintiff's Memorandum of Law in Opposition to Defendants Motion to Dismiss (Doc. 36), and counsel's arguments and representations during a hearing held on May 18, 2017.

### BACKGROUND

On December 28, 2016, former Rollins College student Nicholas Mancini ("**Plaintiff**") initiated this action against Defendants Rollins College ("**Rollins**") and five individuals ("**Individual Defendants**"):[1]

    (1)    Jessica Narducci ("**Investigator**"), who was retained by Rollins as an investigator (Doc. 19, ¶ 7);

---

[1] The Court dismissed Plaintiff's initial Complaint as a shotgun pleading (Doc. 7), and Plaintiff filed an Amended Complaint on **January 20, 2017** (Doc. 19).

-1-

 (2) Oriana Jiminez ("**Coordinator**"), who was employed by Rollins as a Title IX coordinator (*id.* ¶ 8);

 (3) Ken Miller ("**Miller**"), who was Rollins' Assistant Vice President of Public Safety (*id.* ¶ 9);

 (4) Rebecca DeCesare ("**Officer DeCesare**"), who was the Dispatch Officer in the Rollins Campus Safety Department (*id.* ¶ 10); and

 (5) Meghan Harte Weyant ("**Dean Weyant**"), who was Rollins' Dean of Students (*id.* ¶ 11).

In his 37-page Amended Complaint,[2] Plaintiff alleges that these Defendants are liable to him for their improper and unlawful handling of a student disciplinary proceeding that resulted from a female student's false accusation that he engaged in "non-consensual sexual activity" with her in his dormitory room at Rollins ("**Room**"). (*See* Doc. 19, ¶¶ 2, 28.) Plaintiff asserts the following federal and state law claims against Rollins (Counts I through VII), the Investigator and Coordinator (Count VII), and the remaining Individual Defendants (Counts I and V):

---

[2]The lengthy Complaint is somewhat obtuse because Plaintiff referred to, but failed to provide copies of, many important documents. (*See* Doc. 19.) For instance, Plaintiff did not provide copies of the following documents that are referenced in the Amended Complaint: (1) the Rollins College Code of Community Standards ("**Code**"); (2) the Sexual Misconduct and Harassment Policy ("**Policy**"); (3) Rollins' "Responding Party Bill of Rights" ("**Bill**"); (4) the No-Contact Orders issued to Plaintiff and the Accuser following the Incident ("**Contact Orders**"); (5) a campus notification "of a reported incident" ("**Campus Notice**"); (6) a "Notice of Investigation" issued to Plaintiff on January 21, 2016 ("**Initial Notice**"); (7) another notice issued to Plaintiff on January 31, 2016 ("**Additional Notice**"); (8) correspondence to Plaintiff dated April 7, 2016 ("**April Letter**"); (9) Plaintiff's appeal of the April Letter ("**Appeal**"); and (10) Plaintiff's written request for a copy of the Accuser's appeal ("**Appeal Request**"). Plaintiff alleges that certain documents, like the Code, Policy, and Bill are available online. While the Court found and reviewed the current version of such documents, the Court did not locate any prior versions that would be pertinent to Plaintiff's allegations.

    **Count I**    -    Title IX Gender Discrimination, 20 U.S.C. § 1681 (*id*. ¶¶ 54–116);

    **Count II**    -    Violation of the 14th Amendment (Procedural Due Process) (*id*. ¶¶ 117–29);

    **Count III**    -    Breach of Contract (*id*. ¶¶ 130–35);

    **Count IV**    -    Breach of Covenant of Good Faith and Fair Dealing (*id*. ¶¶ 136–40);

    **Count V**    -    Negligent Infliction of Emotional Distress (*id*. ¶¶ 141–50);

    **Count VI**    -    Estoppel and Reliance (*id*. ¶¶ 151–57); and

    **Count VII**    -    Declaratory Judgment (*id*. ¶¶ 158–62).

Rollins and the Individual Defendants jointly filed a Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 28 ("**Motion**")), and Plaintiff responded (Doc. 36 ("**Response**")). The Court conducted a hearing on May 18, 2017 ("**Hearing**"). (Doc. 55.) At the Hearing, Plaintiff conceded that the Court should dismiss Count V as to all Defendants, Count I as to the Individual Defendants, and Count VII as to the Coordinator and the Investigator. (*See* Doc. 36, p. 5, n.1 (conceding that Title IX does not provide for individual liability); *id*. at 17, n.2 (conceding that the "negligent infliction of emotional distress claim is due to be dismissed").) Plaintiff also conceded that he must reallege Count II under the Fifth Amendment. Based on Plaintiff's concessions, Rollins is the only remaining Defendant and Count II is due to be dismissed with leave to reassert. Upon consideration, the Court finds that the MTD is otherwise due to be denied.

## I.  LEGAL STANDARDS

The Federal Rules of Civil Procedure set forth minimum pleading requirements. Rules 8 and 10 require plaintiffs to provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. *See* Fed. R. Civ. P. 8(a), (d) ("Each allegation must be simple, concise, and direct."); *see also* Fed. R. Civ. P. 10(b). If a complaint fails to state a plausible or legally sufficient claim, the defendant may file a motion to dismiss under Rule 12(b)(6). *See Popham v. Cobb Cty., Ga.*, 392 F. App'x 677, 678 (11th Cir. 2010).

In resolving a Rule 12(b)(6) motion, courts must accept as true all well-pled factual allegations and determine whether the complaint sets forth plausible claims—that is claims with sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Further, courts may dismiss any claim that rests only on "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts." *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## II.   THE AMENDED COMPLAINT

According to the Amended Complaint,[3] Plaintiff was a male student at Rollins College who was falsely accused by a female student ("**Accuser**") of engaging in "non-consensual sexual activity" with her in his Room ("**Accusation**"). (*See* Doc. 19.) Plaintiff's claims arise out of Defendants' handling of the Accusation: "this Complaint addresses Rollins' unlawful and/or gender biased treatment of innocent male students like [Plaintiff] via sexual misconduct proceedings that afford females unconstitutional preferential treatment." (*See id.* ¶¶ 2, 28.) Specifically, Plaintiff seeks damages and declaratory relief based on Rollins' allegedly "wrongful and unjustified imposition of sanctions based on [the Accuser's] false and unproven allegations of sexual misconduct, as well as Rollins' failure and refusal to investigate or report [Plaintiff's] own allegations of sexual misconduct." (*Id.*)

### A.   The Incident

In 2015, Rollins accepted Plaintiff for admission to the Class of 2019, awarded him a $60,000.00 academic scholarship, and provided him with copies of the Code and the Policy. (*Id.* ¶¶ 35, 36.) Plaintiff matriculated in the Fall of 2016, and he moved into the Room with his roommate ("**S.P.**"). (*See id.* ¶ 44.) One evening during his second semester at Rollins, Plaintiff and S.P. went out drinking together. (*See id.*) They returned to their

---

[3]The facts recited in this Order are not the actual facts of the case—those are yet to be revealed in discovery and possibly at trial. *See Iqbal*, 556 U.S. at 678–79. Rather, the facts recited here are simply those set forth in the Amended Complaint, and they are pertinent only to the Court's resolution of the Defendants' Motion. *See id.*; *see also Bostick v. McGuire*, No. 2017 WL 897308, at *1, n.1 (M.D. Fla. Mar. 7, 2017).

Room at 2:00 a.m. with another Rollins student ("**A.S.**") and two non-students ("**Visitors**").

At 2:30 a.m., the Accuser allegedly entered the Room without invitation. After approximately one half hour of visiting, during which the Accuser discussed the events of her evening, the Visitors departed, but Accuser stayed. Approximately ten minutes later, the Accuser allegedly kissed Plaintiff for five minutes before pulling back and stating that she should not "do this" because she has a boyfriend. Plaintiff responded that was fine. Although the Accuser then walked to the door, she did not leave. Instead, she "returned to the futon, straddled [Plaintiff] and began to kiss him again" without obtaining his consent. After several minutes, the Accuser stopped kissing Plaintiff, went over to S.P., and started kissing him. After another five minutes, the Accuser stopped, and again stated she has a boyfriend. Plaintiff and S.P. then walked the Accuser to her room which was in the same dormitory. (*See id*. ¶¶ 45–48, 85.) These late-night events are referred to as the "**Incident**."

The day after the Incident, at 11:30 a.m., the Accuser and her roommate ("**K.E.**") visited the Room, and the Accuser allegedly "acknowledged that she was also responsible" for the Incident. (*See id*. ¶¶ 49–50.) When the Accuser left, Plaintiff and S.P. "told K.E. everything that they remembered from the previous night." (*See id*. ¶ 51.)

B.  **Initial Proceedings**

On **January 19, 2016**, the Accuser "contacted the Office of the Dean of Students" and "falsely" reported that Plaintiff and S.P. "assaulted her" in the Room. (*See id*. ¶ 52.) Rollins immediately issued the Contact Orders to Plaintiff and the Accuser. (*See id*.) Two

days later, the Coordinator provided Plaintiff with the Initial Notice, which advised that "a report of sexual assault had been alleged against" him.[4] (*See id.* ¶ 55.) The same day, Plaintiff, Dean Weyant, the Coordinator, and Miller attended an "initial meeting" concerning the Accusation ("**Initial Meeting**") where: (1) Plaintiff stated that the Accuser initiated all physical contact with him "without asking for his consent" ("**Consent Complaint**"); (2) the Coordinator told Plaintiff to not make a report concerning his Consent Complaint and threatened him to "stay quiet" about his Consent Complaint; and (3) Miller "repeatedly accused [Plaintiff] of committing rape." (*See id.* ¶¶ 84–88.)

The week following the Initial Meeting, the Coordinator ignored Plaintiff's requests for information. (*See id.* ¶ 56.) In addition, Rollins took no action against Accuser after Plaintiff reported that the Accuser violated the Contact Order by attending a party sponsored by Plaintiff's fraternity and lacrosse team ("**Contact Violation**"). (*See id.* ¶¶ 53, 54, 78, 109, 110.)

On **January 31, 2016**, Rollins provided Plaintiff with the Additional Notice, which included a "written list of the allegations against him." (*See id.* ¶ 57.) Plaintiff "immediately" visited the Coordinator. (*See id.* ¶ 58.) Rather than provide "impartial guidance" and "resources" to Plaintiff, the Coordinator cursed at Plaintiff, told him to "dial it the f#@& down," and otherwise "demonstrated bias and prejudgment against

---

[4]On **January 21, 2016**, Officer DeCesare sent the Campus Notice to the campus community concerning the Accuser's report of criminal conduct. (*See* Doc. 19, ¶ 81.) Specifically, the Campus Notice allegedly reported that the Accuser "awoke to two other students engaging in sexual contact with them while [she] was incapacitated and unable to give consent to the sexual activity." (*See id.* ¶ 82.)

him." (*See id.* ¶¶ 59–60.)

### C. The Investigation

On February 1, 2016, the untrained Investigator conducted a scheduled interview with Plaintiff, but did not ask him "to submit a list of witnesses." (*See id.* ¶¶ 57, 70, 74.) The Investigator also did not give Plaintiff "the opportunity to submit questions to be asked" of the Accuser and other witnesses. (*See id.*) Rather, the Investigator: (1) interviewed witnesses chosen solely by the Investigator—including "high school girls" who opined on the Accuser's appearance in Instagram photos; (2) incorrectly summarized the statements of K.E. and another witness ("**W.D.**"); (3) did not give witnesses an opportunity to review or correct the Investigator's summaries; (4) failed to question the Accuser about her alcohol use the night of the Incident; and (5) excluded information about the Contact Violation and statements from witnesses that the Accuser was "not that drunk," "not heavily intoxicated," "coherent," and "fine." Based on this allegedly flawed investigation, the Investigator made the "clearly erroneous" finding that Plaintiff was "responsible" for violating "Rollins' Policies based upon [the Accuser's] state of 'incapacitation'" ("**Decision**"). (*See id.* ¶¶ 66, 70, 71, 72, 76, 77, 91.)

### D. The Decision and Sanctions

Plaintiff alleges that the Decision was made without conducting a hearing or obtaining mitigation information from Plaintiff, and the Coordinator provided the April Letter to Plaintiff on **April 7, 2016**. The April Letter outlined the Decision and the sanctions to be imposed on Plaintiff ("**Sanctions**"). The Sanctions included: (1) retroactive suspension for the Spring 2016 semester without a tuition refund; (2) suspension for the

Fall 2017 semester; (3) notation of the suspensions on Plaintiff's transcript; (4) permanent dismissal from the Rollins dormitory without refund of related costs; (5) a "no contact order" between Plaintiff and Accuser; (6) community probation until graduation; and (7) mandatory sexual harassment and misconduct education and counseling. (*See id.* ¶¶ 94, 100, 111, 115.)

Both Plaintiff and the Accuser appealed the Decision, but Plaintiff does not allege how the appeals were resolved. (*See id.* ¶¶ 66, 96.) Plaintiff does allege that K.E. "submitted a two-page statement with [Plaintiff's appeal] noting corrections and clarifications to her testimony." (*See id.*) The Investigator also "submitted corrections with [Plaintiff's] appeal." (*See id.* ¶ 72.) On **July 6, 2016**, Plaintiff sent the Coordinator a "formal request" for a copy of the Accuser's Appeal ("**Appeal Request**"), which the Coordinator "ignored." (*See id.* ¶¶ 97–98.)

Plaintiff alleges that the Sanctions imposed on him by Rollins are unduly harsh and are causing "irreversible damage to [his] educational, career, and future employment prospects." (*See id.* ¶ 160.) Plaintiff further alleges that Defendants' actions have caused him to sustain "emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages." (*See id.* ¶¶ 139, 156 & p. 36.) In addition to damages for these injuries, Plaintiff seeks judicial declarations that:

> (i) the outcome and findings made by Defendant Narducci and Defendant Jiminez be reversed; (ii) the Sanction be reversed; (iii) Plaintiff's reputation be restored; (iv) Plaintiff's disciplinary record be expunged; (v) the record of Plaintiff's suspension be removed from his education file; (vi) any and all records pertaining to the [I]nvestigation be destroyed; and (vii) Rollins' Code is unconstitutional as applied.

### III. DISCUSSION

**A.  Federal Claims**

 **1.  Count I—Gender Discrimination in Violation of Title IX**

Among other things, Title IX mandates that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Based on this mandate, and by analogy to Title VII discrimination claims, victims of gender discrimination in disciplinary proceedings may bring an implied right of action against funding recipients.[5] *See Yusuf v. Vassar College*, 35 F.3d 709, 714–15 (2d Cir. 1994) (holding that Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision to discipline"); *see also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1293 (11th Cir. 2007) (noting that the "Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX").

Under Title IX, students "attacking a university disciplinary proceeding on grounds of gender bias" may assert two types of claims—"Erroneous Outcome" and "Selective Enforcement."[6] *See Yusuf*, 35 F.3d at 715; *Mallory v. Ohio Univ.*, 76 F. App'x 634,

---

 [5]Plaintiff alleges, and Rollins does not dispute that it "is a private, co-educational university, which receives federal funding." (*See* Doc. 19, ¶ 6; *see also id*. ¶ 24 (alleging that "Rollins received millions of dollars in government grants and contracts for the years 2014 and 2015").)

 [6]"Neither the Supreme Court nor the Eleventh Circuit has yet set forth a framework for analyzing challenges to university disciplinary proceedings brought under Title IX." *Koeppel v. Romano*, No. 6:15-CV-1800-ORL-40KRS, 2017 WL 2226681, at *7 (M.D. Fla. May 11, 2017).

(6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably" by the defendant.). Both theories of liability require that gender bias must motivate the defendant's conduct. *See Doe v. Miami Univ.*, No. 1:15cv605, 2017 WL 1154086, at *5 (S.D. Oh. Mar. 28, 2017). The Court agrees with Plaintiff that the Amended Complaint adequately states both theories of liability under Title IX. (*See* Doc. 36, pp. 7–8.)

To state a plausible Erroneous Outcome claim, the Plaintiff must allege facts sufficient to: (1) "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" (2) support a plausible inference of gender bias; and (3) establish a causal connection between the alleged gender bias and the erroneous outcome. *See Yusuf*, 35 F.3d at 715 (explaining that the plaintiff in an Erroneous Outcome case is "innocent" but "wrongly found to have committed an offense" due to gender bias). Conclusory assertions concerning bias and discriminatory intent are insufficient to establish gender bias at the pleading stage. *See id.* at 715–16.[7] Rather, plaintiffs must allege facts that support a plausible inference of bias and causation—for instance: (1) gender-based comments or animus attributable to the defendant or "members of the disciplinary

---

[7] *See also Doe v. Univ. of Colo., Boulder*, No. 16-cv-1789-WJM-KLM, 2017 WL 2311209, at *10 (D. Colo. May 26, 2017 (noting that allegations of gender bias based only on "information and belief, with no explanation of the information leading to that belief" are insufficient to state a plausible Title IX gender discrimination claim); *Doe v. W. New England Univ.*, No. 15-30192-MAP, 2017 WL 113059, at *28–*29 (D. Mass. Jan. 11, 2017) (dismissing complaint where conclusory allegations of gender bias were not supported by particular factual allegations).

tribunal;" or (2) a "pattern of decision-making" that shows "the influence of gender." *See Doe v. Miami Univ.*, No. 1:15-cv-605, 2017 WL 1154086, at *5 (S.D. Ohio Mar. 28, 2017) (quoting *Doe v. Cummins*, 662 F. App'x 437, 451–52 (6th Cir. 2016)); *Pierre v. Univ. of Dayton*, No. 3:15-cv-362, 2017 WL 1134510, at *11 (S.D. Oh. Mar. 27, 2017).

The Court agrees with Plaintiff that one may plausibly infer that the Decision was erroneous "given the pleaded facts" that: (1) the Accuser initiated kissing with him, and the morning after the Incident, the Accuser confessed to Plaintiff and K.E. that she was responsible for the Incident (*see* Doc. 36, p. 10); (2) two "esteemed Rollins' Wellness Center members expressed serious concerns about the integrity of the Investigator and the investigation" (*see* Doc. 19, ¶ 91); and (3) a polygraph conducted by a polygraph expert "indicate[s] there is *insufficient proof* that it is more likely than not that [Plaintiff] is guilty of sexual assault" (*see id.* ¶ 92). *See Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 185 (D.R.I. 2016) (finding that allegations of consent cast sufficient doubt on accuracy of sexual misconduct finding).

Contending that he has pled sufficient facts to permit a plausible inference that Rollins had a bias against males that caused the "erroneous" Decision, Plaintiff points to his allegations that:

> (1) Rollins faced "apparent pressures" to find males accused of sexual assault guilty in order to preserve federal funding that had been conditioned on compliance with the allegedly biased OCR Letter ("**OCR Allegations**");
>
> (2) Rollins provided Plaintiff with inadequate and untimely notice of the accusations against him ("**Notice Allegations**");

-12-

    (3)    the Investigator was inadequately trained ("**Training Allegations**");

    (4)    the Investigator: (a) did not obtain a witness list from Plaintiff or a list of questions to ask the Accuser and other witnesses; (b) "disregarded witnesses supportive of Plaintiff's defense;" and (c) failed to have the witnesses review and correct the Investigator's "distorted" characterization of their testimony ("**Witness Statement Allegations**");

    (5)    the Investigator did not reference the Contact Violation in her report and she omitted favorable information from her report that the Accuser was not incapacitated from drinking the night of the Incident ("**Factual Omission Allegations**");

    (6)    rather than consider Plaintiff's Consent Complaint against the Accuser, the Coordinator discouraged Plaintiff from pursuing the Consent Complaint ("**Consent Complaint Allegations**"); and

    (7)    Miller "repeatedly accused [Plaintiff] of rape" at the Initial Meeting, and after providing Plaintiff with the Additional Notice, the Coordinator "cursed" at Plaintiff instead of providing him with "impartial guidance" and resources as required by the Policy and the Bill ("**Hostility Allegations**").

(*See* Doc. 36, pp. 10–13.)

As to the OCR Allegations, the Court notes that absent university-specific allegations of community pressure, allegations of a national bias against males based on the OCR Letter have been found insufficient to support an inference of gender bias. *See Cummins*, 662 F. App'x at 452–53 (holding that conclusory and unsupported allegations concerning the DOE and OCR Letter were "insufficient to create a plausible claim of

gender bias").[8] Here, the Amended Complaint includes no reference to adverse news coverage, campus meetings or protests, or enforcement actions concerning Rollins. Absent such "university-specific" allegations, the OCR Allegations are entitled to little weight in the gender bias analysis.

Plaintiff's Training Allegations also fail to support an inference of gender bias by Rollins because there is no logical connection between an inadequately trained Investigator and gender bias. Logically, an untrained investigator would pose similar problems and risks to both parties—regardless of sex. Thus, the Training Allegations are entitled to no weight in the gender bias analysis.

Allegations concerning a defendant's inexplicable refusal to contact specific exculpatory witnesses identified by a male accused is a factor that courts have considered pertinent to the question of gender bias. However, here Plaintiff has not identified a single specific witness that was not interviewed despite Plaintiff's request, nor has he identified the purportedly exculpatory information such witness would have provided. Absent such facts, Plaintiff's Witness Statement Allegations are entitled to little if any weight in the gender bias analysis. *See Doe v. Baum*, No. 16-13174, 2017 WL 57241, at *25 (E.D. Mich. Jan. 5, 2017) (dismissing Title IX claim and finding no inference of gender bias where the

---

[8] *See also Doe v. Lynn Univ., Inc.*, No. 9:16-cv-80850, 2017 WL 237631, at *4 (S.D. Fla. Jan. 19, 2017) (agreeing with *Cummins* that "without more, allegations that [defendant] was cognizant of national pressure to prosecute and punish males . . . would not suffice to support a plausible inference of gender bias"); *Doe v. Univ. of St. Thomas*, No. 16-1127, 2017 WL 811905, at *6 (D. Minn. Mar. 1, 2017) (joining "the majority of federal courts in finding a general reference to federal pressure by itself, is insufficient to show gender bias").

plaintiff did not identify "any information or witness in his favor" that was not considered during the disciplinary process).

Plaintiff's Notice Allegations also are too conclusory to raise a plausible inference of gender bias. Plaintiff has neither summarized the contents of the Initial and Additional Notices, nor has he provided copies of such documents to the Amended Complaint, and he has not identified a single specific fact that was unfairly omitted from the Initial and Additional Notices. Hence the Court is left only with Plaintiff's conclusory assertions that Rollins notices to him were inadequate. The Court need not give weight to conclusory allegations masquerading as facts.

Plaintiff's Consent Complaint Allegations concern the sort of differential treatment that supports a finding of gender bias. Plaintiff's Hostility Allegations also support a finding of gender bias. Rollins argues that such allegations are insufficient because: (1) the Hostility Allegations are just as likely attributable to a bias against accused sex offenders in general—not accused male sex offenders in particular;[9] and (2) the allegations of the Complaint that Plaintiff acquiesced to the Accused's kisses refute Plaintiff's differential treatment allegations. While somewhat persuasive, Rollins' arguments fail because they require that the Court draw inferences in favor of Rollins— which is something the Court cannot do at the pleading stage. Accordingly, the Court

---

[9] *See Cummins*, 662 F. App'x at 453 (finding that a system biased in favor of "alleged victims and against those accused of misconduct . . . does not equate to gender bias because sexual assault victims can be both male and female); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1226–27 (D. Or. 2016) (noting that allegations concerning "a university's aggressive response to allegations of sexual misconduct" does not permit a plausible inference of gender discrimination).

finds that the Motion is due to be denied as to Count I.

To state a Selective Enforcement claim, Plaintiff must allege sufficient facts to permit the plausible inference that "a similarly-situated member of the opposite sex was treated more favorably than" the Plaintiff due to her gender. *See Cummins*, 662 F. App'x at 452; *v. Ohio Univ.*, 76 F. App'x 634, (6th Cir. 2003) ("To support a selective enforcement claim," the male plaintiff must allege "that a female was in circumstances sufficiently similar to his own and was treated more favorably" by the defendant.). Here, the Complaint includes no reference to the necessary comparator; accordingly, Plaintiff has not alleged facts sufficient to state a plausible Selective Enforcement claim.

Although the Amended Complaint is deficient, it nonetheless appears that Plaintiff may be able to properly allege sufficient facts to support a claim of gender discrimination under Title IX. Accordingly, the Court will afford him an opportunity to replead.

### 2. Count II—Procedural Due Process Violation, 42 U.S.C. § 1983

The Fifth Amendment to the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." For students subjected to disciplinary proceedings resulting in suspension or expulsion, due process of law requires "reasonable notice and an opportunity to have a hearing." *See Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987); *see also Cummins*, 662 F. App'x at 452 (noting that suspension from college "clearly implicates a property interest"). Reasonable notice must be "calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Nash*, 812

F.2d at 661–63 (rejecting plaintiffs' allegations that timing and substance of notice deprived them of reasonable notice of academic dishonesty charge).[10] Although "not co-extensive with the rights" of criminal or civil litigants, the hearing afforded a student should provide "an opportunity to present [his] side in considerable detail." *See Sarver v. Jackson*, 344 F. App'x 526, 527 (11th Cir. 2009) (quoting *Dixon v. Ala. State Bd. of Ed.*, 294 F.2d 150, 159 (5th Cir. 1961)); *Baum*, 2017 WL 57241, at *5–*6.

"Title 42 U.S.C. § 1983 provides every person with the right to sue those acting under color of state law for violations of federal constitutional" provisions. *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1299 (11th Cir. 2007). A private university like Rollins "is generally not subject to the constitutional protections of the Fifth Amendment." *See Doe v. Washington & Lee*, No. 6:14-cv-00052, 2015 WL 4647996, at *8 (W.D. Va. Aug. 5, 2015) (citing *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 (1987)); *see also Rendell-Baker v. Kohn*, 457 U.S. 830, 839 (1982). Such private entities act under color of law—or as a "state actor"—only when "there is such a 'close nexus between [the government actor] and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *See Brentwood Acad. v. Tenn. Secondary Athletic Ass'n*, 531 U.S. 288, 296 (2001); *Hiwassee College, Inc. v. S. Assoc. of Colls. & Schools*, 531 F.3d 1333, 1335 n.3 (11th Cir. 2008). Generally, allegations that a private school receives public funding and is obligated to comply with government

---

[10] *See also Castle v. Marquardt*, 632 F. Supp. 2d 1317, 1318 (N.D. Ga. 2009) (finding that "a verbal statement of the charges" was sufficient notice in "the context of post-graduate education" disciplinary proceedings).

regulations is not enough to plead the state actor requirement. *See L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–42 (1982)).

Based on these settled legal standards, Count II is due to be dismissed unless Plaintiff alleges facts permitting plausible inferences that: (1) Rollins deprived him of a property right without "reasonable notice and an opportunity to have a hearing" as required by the Fifth Amendment;[11] (2) Rollins' violations of Plaintiff's constitutional rights were performed under color of federal law;[12] and (3) before initiating this action, Plaintiff exhausted the processes available to him at Rollins.[13] Plaintiff has not met these pleading requirements. In particular, repleader is required because: (1) Plaintiff incorrectly brought his procedural due process claim under the Fourteenth Amendment instead of the Fifth Amendment; and (2) the Amended Complaint provides insufficient factual allegations to support plausible inferences that—(a) Rollins was acting under color of state law, and (b) Plaintiff exhausted all "remedies" afforded by Rollins. Thus, the Motion will be granted as to Count II.

---

[11] *See Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987); *see also Sarver*, 344 F. App'x at 527; *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001)).

[12] *Rendell-Baker*, 457 U.S. at 839 (affirming dismissal of complaint against private school based on state actor requirement); *Hiwassee College*, 531 F.3d at 1335 n.3 (11th Cir. 2008) (finding that a private accrediting organization was not pervasively entwined with the DOE).

[13] *See Doe v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682-T-30EAJ, 2015 WL 3453753, at *3 (M.D. Fla. May 29, 2015) (dismissing procedural due process claim because the plaintiff did not "allege that he sought an appeal" of defendant's adverse disciplinary decision); *see also Sarver*, 344 F. App'x at 530 (affirming dismissal of procedural due process claim where plaintiff did not participate in an available appellate process); *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994).

## B. State Law Claims

Finally, the Court finds that the Amended Complaint adequately alleges Plaintiff's state law claims. In particular, Plaintiff's allegations that Defendant disregarded its own policies in reaching the Decision are sufficient to state plausible contract and quasi-contractual claims. *See Lynn Univ.*, 2017 WL 237631, at *5 (denying motion to dismiss breach of contract and good faith and fair dealing claims based on defendant's deviation from procedures set out in defendant's published policies). Further, Rollins argument that the State Law Claims should be dismissed as contradictory and inconsistent is meritless—Plaintiff is entitled to allege multiple inconsistent claims. *See* Fed. R. Civ. P. 8.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 28) is **GRANTED IN PART AND DENIED IN PART**.

    a. The Motion (Doc. 28) is **GRANTED** with respect to Count II and all claims asserted against the individual Defendants—Jessica Narducci, Oriana Jiminez, Ken Miller, Rebecca DeCesare, and Meghan Harte Weyant.

    b. The Motion (Doc. 28) is denied in all other respects.

(2) Count II of the Amended Complaint (Doc. 19) is **DISMISSED WITHOUT PREJUDICE**.

(3) As to Defendants Oriana Jiminez and Jessica Narducci, Count VII of the Amended Complaint (Doc. 19) is **DISMISSED**.

(4) As to the Defendants Jessica Narducci, Oriana Jiminez, Ken Miller, Rebecca DeCesare, and Meghan Harte Weyant, Counts I and V of the Amended Complaint (Doc. 19) are **DISMISED**.

(5) The Clerk is directed to terminate Jessica Narducci, Oriana Jiminez, Ken Miller, Rebecca DeCesare, and Meghan Harte Weyant as parties to this action.

(6) On or before **August 4, 2017**, Plaintiff is granted leave to file a Second Amended Complaint in accordance with the requirements of this Order.

(7) In the event Plaintiff fails to file a Second Amended Complaint in the time prescribed, this action will proceed as to Plaintiff's Title IX and state law claims against Defendant Rollins College.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of July, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record